**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| SANDRA DICKSON, | NO.  3:26-cv-5774 |
| Plaintiff, | |
| v. | PLAINTIFF'S COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE FEDERAL FAIR CREDIT REPORTING ACT, *INTER ALIA* |
| CHECKR, INC., DOORDASH, INC., and PERSONA IDENTITIES, INC., | |
| Defendants. | **JURY DEMAND** |

COMES NOW, Plaintiff, SANDRA DICKSON, by and through her attorney, SARAELLEN HUTCHISON, and complains against Defendants, CHECKR, INC. ("CHECKR"), DOORDASH, INC. ("DOORDASH") and PERSONA IDENTITIES, INC. ("PERSONA") as follows:

### I.    STATEMENT OF THE CASE

1.1    This is an action for damages and injunctive relief to prevent further harm to Plaintiff, a 71-year-old victim of identity theft and Defendants' false credit reporting, and to prevent Defendants' future violations of the Federal Fair Credit Reporting Act ("FCRA") and other laws.

1.2    As big technology companies monetize daily human existence through scalable apps, subscription pricing models, and independent contractor "gig economy" labor, consumers left exposed to data breaches and identity theft pay the price for the technological revolution.

PLAINTIFF'S COMPLAINT
3:26-CV-5774

1

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

1.3     Defendants are a background check consumer reporting company (CHECKR), a technology company (DOORDASH) and an identity verification/fraud prevention company (PERSONA) whose system is designed with ease over security so that technology companies can use cheap independent contractor labor without having to personally meet workers.

1.4     Defendants' systems and process made it easy for an identity thief with a fake ID in Plaintiff's name to pass through CHECKR and PERSONA to work for DOORDASH.

1.5     The FCRA provides federally codified protection of Plaintiff's civil rights with regard to the accuracy of consumer reports that for-profit companies like CHECKR issue about her.

1.6     The FCRA is part of a larger category of consumer protection statutes, like the Equal Credit Opportunity Act, the Fair Housing Act, and Fair Debt Collection Practices Act, designed to protect consumers against discrimination, intrusions upon privacy, inaccurate consumer reports and background checks as in this case, and other types of unfair and inequitable treatment.

1.7     Claims under these federal laws are brought "in connection with any action involving a claim of 'unlawful discrimination,'" as described in 26 U.S.C § 62(a)(20). For the purposes of 26 U.S.C § 62(a)(20), the term "unlawful discrimination" is broadly defined in 26 U.S.C § 62(e) to mean "an act that is unlawful under . . .[a]ny provision of Federal, State, or local law, or common law claims permitted under Federal, State, or local law . . . providing for the enforcement of civil rights."

1.8     For reasons which benefit both consumers and businesses, the FCRA demands that consumer reporting agencies ("CRAs") follow reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

1.9     The FCRA's accuracy provision demands that CRAs follow reasonable procedures to assure the maximum possible accuracy of the information they report.  CHECKR failed to do so here.

1.10   In this case, CHECKR is a consumer reporting agency under the FCRA. CHECKR provides background check reports – which are consumer reports under the FCRA – to companies, like DOORDASH, that are considering consumers and employees for employment and independent contractor work.

1.11   In this case, CHECKR provided a consumer report on Plaintiff to DOORDASH when an identity thief posing as Plaintiff with a fake ID was able to bypass PERSONA's identity verification system, and neither CHECKR nor DOORDASH required further verification.

1.12   The report CHECKR provided to DOORDASH contained inaccurate information about Plaintiff that was used by the identity thief, such as that thief's phone number and email.

1.13   The inquiry and employment with DOORDASH have remained on Plaintiff's file with CHECKR ever since.

1.14   Plaintiff then was shocked to receive nearly $60,000 in tax bills from the IRS based on the income the identity thief generated by driving for DOORDASH, and DOORDASH has ignored Plaintiff's pleas to withdraw the fraudulent 1099s in Plaintiff's name.

1.15   Defendants' actions are an ongoing and escalating nightmare for Plaintiff.

## II.   PARTIES

2.1   Plaintiff resides in Aberdeen, Washington.

2.2   CHECKR is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. §1681a(f).

2.3   CHECKR is required to comply with the FCRA.

2.4   CHECKR is a Delaware corporation registered to do business in Washington State pursuant to UBI number 603 465 823.

2.5   CHECKR is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d), to third parties and for profit.

PLAINTIFF'S COMPLAINT
3:26-CV-5774

3

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

2.6    CHECKR sells such consumer reports to third parties under contract for monetary compensation.

2.7    DOORDASH paid CHECKR for the report CHECKR sold about Plaintiff as described herein.

2.8    Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c), and Plaintiff was a "consumer" at all times relevant to this litigation.

2.9    DOORDASH, INC. ("DOORDASH") is a tech company; the largest online and app-based food delivery platform in the United States.

2.10    DOORDASH does business in Washington State pursuant to UBI number 603 539 614.

2.11    DOORDASH is a "user" pursuant to the FCRA.

2.12    PERSONA IDENTITIES, INC. ("PERSONA") is an identity-verification company used by DOORDASH.

2.13    PERSONA is a Delaware Corporation registered in Delaware under File Number 6978487.

2.14    DOORDASH and PERSONA are therefore "businesses" as defined by the Washington State Consumer Protection Act, RCW 19.86, and acted as such at all times relevant herein.

2.15    Plaintiff is a "consumer" as that term is contemplated by the Washington State Consumer Protection Act, RCW 19.86, and acted as such at all times relevant herein.

### III.    JURISDICTION AND VENUE

3.1    Jurisdiction and venue in the United States District Court, Western District of Washington, are appropriate because  this dispute involves federal law, where all acts at issue and described herein occurred in this District, where the injury to Plaintiff occurred in this District, where Defendants do business in this District, and where Plaintiff is a resident of this District. 15 U.S.C. §1681; 28 U.S.C. §1391(b); 28 U.S.C. §1331.

PLAINTIFF'S COMPLAINT                          4            Law Office of SaraEllen Hutchison, PLLC
3:26-CV-5774                                                          1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
                                                                              Ph (206) 529-5195 | Fax (253) 302-8486
                                                                              saraellen@saraellenhutchison.com

3.2    CHECKR and DOORDASH are liable unto Plaintiff pursuant to the FCRA as well as other laws.

3.3    DOORDASH and PERSONA are also liable unto Plaintiff pursuant to the laws of the State of Washington, which claims may be brought under the supplemental jurisdiction of this Court.  28 U.S.C. §1367, et seq.

## IV.    FACTS

4.1    Being a victim of identity theft or receiving a large, unexpected tax bill, especially when combined, is incredibly stressful and a nightmare to Plaintiff, especially as a senior citizen.

4.2    Plaintiff is a 71-year-old woman in Aberdeen, Washington.

4.3    In 2023 – 2024, unbeknownst to Plaintiff at the time, an identity thief posing as Plaintiff obtained a fake ID in Plaintiff's name and was able to pass through a background check with CHECKR under Plaintiff's identifiers, pass through PERSONA's identity screening process, and become an independent contractor driver for DOORDASH in California under Plaintiff's name and SSN.

4.4    DOORDASH issued 1099s totaling over $60,000 in Plaintiff's name and SSN.

4.5    Plaintiff discovered this initially on or about March 19, 2026 when she received an IRS CP 2000 notice identifying DOORDASH reporting a 1099-NEC document with $66,714 wages to her SSN, identifying $33,178 for 2023 in back taxes, interest and penalties.

4.6    Plaintiff lost a full 8-hour day of work on March 19, 2026 due to shock over this news.

4.7    Thus began Plaintiff's nightmare of trying to rectify the matter with the IRS and Defendants, which is still unresolved.

4.8    On March 20, 2026, Plaintiff reported the crime to the Grays Harbor County Sheriff's Department (Incident #26-004826).

4.9    On March 23, 2026, Plaintiff sent a certified letter to DOORDASH reporting the identity theft and disputing the 1099 (USPS tracking number 70150640000225256384).

4.10    On March 24, 2026, Plaintiff notified H&R Block of the identity theft, and her representative Shawn Emerson wrote a letter to IRS on her behalf identifying that the CP2000 notice is being disputed with Plaintiff's IRS 14039 Identity Theft Affidavit, which was sent by certified mail (tracking number 70150640000225256391).

4.11    On March 31, 2026, Plaintiff requested that Equifax place a 7-year Fraud Alert via certified mail with accompanying documents (USPS tracking no. 70150640000225256407).

4.12    On April 8, 2026, the IRS received Plaintiff's 14039 Identity theft Affidavit for 2023 fraudulent reporting of wages under her SSN.

4.13    On April 10, 2026, Plaintiff Equifax received Plaintiff's freeze request.

4.14    On April 22, 2026, the FTC received Plaintiff's written complaint re: identity theft by certified mail (tracking number 70210350000143493466).

4.15    Plaintiff did some online research and discovered that DOORDASH had a data breach incident on October 25, 2025 and was concerned that Plaintiff's data was further compromised even though she had never worked for DOORDASH and DOORDASH was not legitimately in possession of Plaintiff's PII.

4.16    On May 5, 2026, Plaintiff sent a second letter to DOORDADH disputing the 1099 due to identity theft and the newly discovered October 25, 2025 data breach, enclosing for a second time her first letter written on March 23, 2026 because DOORDASH had not responded (USPS tracking number 70210350000143493473).

4.17    On May 5, 2026, Plaintiff filed an online police report filed with the San Jose, California financial crimes unit (incident number T26007733).

4.18    On May 6, 2026, Plaintiff reported the identity theft to the California Secretary of State Shirley N. Weber.

4.19    In her letter to Secretary Weber, Plaintiff expressed concern that there might also be fraudulent voter registration, and enclosed both 1099-NEC documents with her letter.

4.20    Plaintiff did extensive online research trying to figure out how this happened and who was responsible, and which government agencies needed to be informed.

PLAINTIFF'S COMPLAINT                    6            Law Office of SaraEllen Hutchison, PLLC
3:26-CV-5774                                                   1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
                                                              Ph (206) 529-5195 | Fax (253) 302-8486
                                                              saraellen@saraellenhutchison.com

4.21    In that process, Plaintiff learned that DOORDASH uses CHECKR and PERSONA to screen "Dasher" (driver) candidates.

4.22    On May 7, 2026, Plaintiff wrote to the California Franchise Tax Board notifying them that she is an identity theft victim, and that someone worked for DOORDASH and passed a CHECKR background check using her exact name and SSN.

4.23    In her May 7, 2026 letter, Plaintiff enclosed copies of both 1099-NEC documents filed with IRS by DOORDASH included in the mailing as well as the police reports, letter to the FTC and both letters sent to DoorDash to inform of the identity theft (3/23/26 and 5/5/26).

4.24    On May 21, 2026, frustrated that DOORDASH had not responded to her at all, Plaintiff wrote to DOORDASH's General Counsel requesting all records (employment and payroll) sent by certified mail (certified #70210350000143493480).

4.25    On May 21, 2026, Plaintiff wrote to the CHECKR Consumer Dispute Department reporting the identity theft and seeking disclosure of her credit file, which was expressed as a request for records, via certified mail (certified #70210350000143493497).

4.26    On May 21, 2026, Plaintiff filed an Identity Theft Affidavit with the California Franchise Tax Board sent via certified mail (certified #70210350000143493503) and enclosing her May 7, 2026 letter to FTC with supporting documents in the mailing.

4.27    On May 22, 2026, Plaintiff submitted a CFPB complaint against Equifax for not placing the requested 7-year freeze on her account (complaint #260523-33093695).

4.28    On May 22, 2026, Plaintiff filed an Identity Theft Affidavit with the California Franchise Tax Board by certified mail (certified #70210350000143493503).

4.29    On May 23, 2026, Plaintiff submitted an CFPB complaint against CHECKR regarding identity theft and CHECKR's lack of response (complaint #260523-33106059).

4.30    On May 23, 2026, the CFPB complaint against DOORDASH re: identity theft was forwarded to the FTC (complaint #260523-33106765).

4.31    On May 26, 2026, both CHECKR and DOORDASH received Plaintiff's certified mail dispute letters.

PLAINTIFF'S COMPLAINT
3:26-CV-5774

7

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

4.32    On May 26, 2026, Plaintiff filed a complaint with the California Privacy Protection Agency with accompanying documents regarding DOORDASH and CHECKR, which was sent by certified mail (certified #70210350000143493053).

4.33    On May 26, 2026, Plaintiff submitted a Notice of Cross Border Employment Identity Theft and sensitive PII compromise filed with the Washington Office of Privacy and Data Protection.

4.34    On May 26, 2026, Plaintiff submitted an online report to the IRS sent online with document uploads regarding the identity theft.

4.35    On May 27, 2026, Plaintiff made an online identity theft complaint to the California DMV for potential fraudulent CA driver's license under her exact name (Case #26B1D21106) phone# to South San Francisco DMV assigned to the case (650) 585-8937.

4.36    On May 28, 2026, Plaintiff submitted IRS form 911 to request Taxpayer Advocate Service Assistance.

4.37    On May 28, 2026, Plaintiff sent a second dispute and request for information to Administrative Demand Letter to DOORDASH General Counsel sent by certified mail (certified #70210350000143493060).

4.38    On May 28, 2026, Plaintiff sent  a copy of the letter to DOORDASH through the registered agent in Sacramento, CA: CSC Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833 by certified mail (certified#70210350000143493077).

4.39    On May 28, 2026, Plaintiff sent a copy of the same DOORDASH letter to: CSC Lawyers Incorporating Service, 300 Deschutes Way SW, Suite 208, Tumwater, WA 98501 by certified mail (certified #70210350000143493084).

4.40    On June 1, 2026, Plaintiff sent a complaint to the California Department of Industrial Relations re: labor standards complaint regarding unauthorized independent contractor misuse, screening failure and tax fraud, via certified mail with supporting documents (certified# 70210350000143493091).

PLAINTIFF'S COMPLAINT
3:26-CV-5774

8

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

4.41    On June 2, 2026, Plaintiff submitted another CFPB complaint regarding CHECKR for its lack of response to the identity theft complaint (CFPB complaint #260602-33537859).

4.42    On June 2, 2026, Plaintiff sent a complaint regarding CHECKR and DOORDASH to the California Department of Industrial Relations by certified mail along with supporting documentation (certified #70210350000143493091).

4.43    On June 2, 2026, Plaintiff sent a letter to the Washington State Attorney General Consumer Protection Division requesting they initiate an investigation into DOORDASH, with supporting documents.

4.44    On June 2, 2026, Plaintiff sent a letter to California DOJ e-crime unit/Criminal Law Division requesting an investigation into DOORDASH and CHECKR, with supporting documents.

4.45    On June 3, 2026, Plaintiff sent a letter to the WA State Attorney General Consumer Protection Division requesting they open an investigation into both CHECKR and DOORDASH, with accompanying documents, sent by certified mail (certified# 70210350000143493121).

4.46    On June 3, 2026, Plaintiff sent a letter to the California DOJ reporting the identity theft involving DOORDASH and CHECKR and requesting an investigation, and included supporting documents (certified #70210350000143493114).

4.47    June 4, 2026, Plaintiff finally received a response from CHECKR's Support agent Lin in response to Plaintiff's first CFPB complaint that was a cursory explanation that CHECKR was investigating; this was the first communication Plaintiff received from CHECKR despite Plaintiff's multiple efforts to request her CHECKR file disclosure and dispute the identity theft.

4.48    CHECKR's response via Lin failed to include a disclosure of Plaintiff's consumer file with CHECKR or address the substance of Plaintiff's identity theft dispute.

4.49    It had been over two months since the IRS notice, and Plaintiff was more scared that she would be held liable for IRS penalties or worse for taxes on income she did not receive.

PLAINTIFF'S COMPLAINT
3:26-CV-5774

9

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

4.50    On June 5, 2026, Plaintiff sent a letter to the WA State Attorney General Consumer Protection Division seeking urgent help from the agency (certified #70210350000143493169).

4.51    On June 5, 2026, Plaintiff, understandably upset that the CFPB had closed both of Plaintiff's complaints regarding CHECKR, sent another letter to the California DOJ e-crime seeking assistance (certified #70210350000143493176).

4.52    On June 6, 2026, Plaintiff received a CHECKR Zendesk (customer service) email response from CHECKR's agent Sanjana to Plaintiff's second CFPB complaint.

4.53    This response from CHECKR via Sanjana failed to include a consumer file disclosure, a substantive response to Plaintiff's identity theft dispute.

4.54    On June 6, 2026, Plaintiff sent a letter to CHECKR's General Counsel demanding that CHECKR block fraudulent information and disclose the contents of her consumer file, which she expressed as a request for records (certified #70210350000143493152).

4.55    On June 6, 2026, Plaintiff sent a copy of her block request letter to CHECKR via: CT Corporate System, 330 N. Brand Blvd, Suite 700, Glendale, CA 91203. Sent by certified mail (certified#70210350000143493190).

4.56    On June 6, 2026, Plaintiff sent a copy of her block request letter to CHECKR via: CT Corporation Service Company, 300 Deschutes Way SW, Suite 208, Tumwater, WA 98501. Sent by certified mail (certified #70210350000143493183).

4.57    On June 6, 2026, Plaintiff sent a certified letter to the WA State Attorney General Criminal Justice Division: Complex Litigation Unit requesting that they open a formal criminal investigation sent by certified mail (certified #70210350000143493213).

4.58    On June 16, 2026, Plaintiff was disappointed to learn from the WA State Attorney General Consumer Protection Division via email that email DOORDASH failed to respond to her first complaint (file#720762).

///

PLAINTIFF'S COMPLAINT
3:26-CV-5774

10

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

4.59    On June 16, 2026, Plaintiff was completely fed up and tired of her written requests being ignored, so in a desperate attempt to protect her economic interests, she purchased a consumer file disclosure from CHECKR online for $42.49.

4.60    CHECKR has engineered the situation where consumers are rebuffed repeatedly when they attempt to order file disclosures through any means other than CHECKR's online "portal" and CHECKR's take-it-or-leave-it, unconscionable "terms."

4.61    Plaintiff had no choice in the matter, because CHECKR was not cooperating through other means.

4.62    On June 23, 2026, CHECKR emailed Plaintiff what amounts to an admission that they perform zero reinvestigation, stating in relevant part:

> "Unfortunately, we're not able to edit or remove information originally entered on your background check report. If this causes a mismatch between the information provided and the information we collect, it will show up on your completed report as 'Consider.'"

4.63    No one should have to "consider" false employment history.

4.64    On June 26, 2026, the CFPB sent two more of Plaintiff's complaints to the FTC.

4.65    On June 26, 2026, CHECKR finally sent Plaintiff a consumer file disclosure but when Plaintiff reviewed it, it was incomplete, with no trace of DOORDASH.

4.66    On July 1, 2026, CHECKR emailed Plaintiff to explain that it does not perform identity verification "as a default step" before running a background report based on PII provided by a consumer or an employer.

4.67    In this July 1, 2026 email from CHECKR, CHECKR also stated that Plaintiff's file "contains no California employment history."

4.68    Plaintiff was in complete disbelief, and so on that day, Plaintiff wrote to the California DMV reporting the identity theft and requesting records.

4.69    On July 2, 2026, Plaintiff received another email from CHECKR stating that it had received Plaintiff's request for a consumer file and was processing it.

4.70    On July 3, 2026, Plaintiff received a file disclosure from CHECKR that contained the fraudulent information from the identity thief, including the thief's employment with DOORDASH, an email address Plaintiff has never used, and a California telephone number that does not belong to Plaintiff.

4.71    Plaintiff was shocked and angry when she saw this false information.

4.72    This July 3, 2026 file disclosure showed two inquiries from DOORDASH dated January 9, 2023 and March 31, 2024 with Plaintiff's identifiers but a fake email and phone number that were not Plaintiff's.

4.73    That day, Plaintiff submitted a complaint to the CFPB, stating, in relevant part:

"I am 71. I have nothing to do with DoorDash. An identity thief used my SSN and Washington licenses to work for DoorDash for two years, racking up $81,587 in fraudulent wages reported to my IRS profile. In late June, I ordered my own background check, which was clean and didn't show the thief. However, upon receiving a complete file request from Checkr I found Checkr is actively housing the thief's fake Gmail, fake phone number, and fraudulent DoorDash background checks right next to my clean report in my master file. Checkr ignored my official identity theft documents which are also in the complete file I received on 7/3/26. Checkr failed to block this fraud. I demand Checkr manually strip the thief's data from my file and permanently block my SSN from future checks without my verified permission. As a regulatory agency with jurisdiction on these matters it is my expectation that you investigate their business practices."

4.74    To this day, Plaintiff has never received a response from DOORDASH, and to Plaintiff's knowledge, DOORDASH has not withdrawn the 1099s it submitted to the IRS.

4.75    DOORDASH is aware that fraudulent applicants plague its platform, and should know that an impersonal, app-based, gig-based relationship with drivers and candidates is an invitation for thieves to try to get around any kind of technological replacement for "IRL" (in real life) job interviews.

4.76    DOORDASH even publishes an entire webpage on the subject of fraudulent "Dashers" and IRS fraud: https://help.doordash.com/en-us/dashers/article/responding-to-suspected-identity-theft-as-a-dasher (accessed July 10, 2026).

4.77    Despite the "expert" recommendations DOORDASH offers identity theft victims on its site, DOORDASH did nothing for Plaintiff.

4.78    DOORDASH claims it has "robust" screening. https://about.doordash.com/en-us/news/our-commitment-to-maintaining-a-safe-and-trusted-platform (Accessed July 10, 2026).

4.79    DOORDASH's website claims that it "take[s] all reports about safety – including identity – extremely seriously…" See, https://about.doordash.com/en-us/news/our-commitment-to-maintaining-a-safe-and-trusted-platform (Accessed July 10, 2026).

4.80    Plaintiff did additional investigation and learned that DOORDASH uses PERSONA to conduct identity screening of driver candidates.

4.81    PERSONA's website states proudly that it relies on *selfies* to verify candidates.

4.82    PERSONA's website states that companies can "Collect less information than a government ID check requires, and redact all data when the process is complete." See, https://withpersona.com/product/verifications/selfie-age-estimation (accessed 7/9/26).

4.83    PERSONA's processes seem tailored to employers who are more concerned with minimizing their liabilities that could arise from viewing and retaining sensitive data about potential employees than they are concerned about protecting consumers like Plaintiff who are put at risk because so little data is considered or reviewed.

4.84    PERSONA's processes also prioritize speed and convenience over safety: "Capture a live selfie from your users through a guided, mobile-friendly experience built to minimize drop-off." See, https://withpersona.com/product/verifications/selfie-age-estimation (accessed 7/9/26).

4.85    This ordeal has caused Plaintiff significant emotional distress, sleepless nights, embarrassment, shame, humiliation, monetary loss, the threat of the consequences of an unpaid fraudulent tax bill, the cost of postage, wasted time and effort, intrusion into her privacy, fear of future harm to her reputation and economic interests, an unwelcome distraction from her family, and other harms and losses, both economic and non-economic.

4.86    Plaintiff believes, and therefore avers, that Defendants have caused similar harm to thousands of other people who, as in Plaintiff's words, "have nothing to do with Doordash."

## V.    FIRST CAUSE OF ACTION

(Federal Fair Credit Reporting Act Violation – 15 U.S.C. §1681e(b) )

5.1    Plaintiff re-alleges sections I through IV, inclusive as though fully set forth herein.

5.2    CHECKR violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports CHECKR published about her to DOORDASH.

5.3    CHECKR reported false and inaccurate information about Plaintiff in its consumer report, to wit: an email address, telephone number and employer (DOORDASH).

5.4    As a result of this conduct, action and inaction of Defendant, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seek damages in an amount to be determined by the jury.

5.5    CHECKR's conduct, action and inaction were willful, rendering CHECKR liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

5.6    In the alternative, CHECKR was negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

5.7    Plaintiff is entitled to recover costs and attorneys' fees from CHECKR pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## VI.    SECOND CAUSE OF ACTION

(Federal Fair Credit Reporting Act Violation – 15 U.S.C. §1681i)

6.1    Plaintiff re-alleges sections I through V, inclusive as though fully set forth herein.

6.2    CHECKR violated 15 U.S.C. §1681i by failing to delete inaccurate information in Plaintiff's credit files after receiving actual notice of such inaccuracies; failing to conduct reasonable reinvestigations; failing to communicate the results of any reinvestigation to Plaintiff; and, failing to consider all relevant information provided by Plaintiff.

6.3    As a result of this conduct, action and inaction of Defendant CHECKR, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, lost employment opportunities, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

6.4    CHECKR's conduct, action and inaction were willful, rendering CHECKR liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

6.5    In the alternative, CHECKR was negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

6.6    Plaintiff is entitled to recover costs and attorneys' fees from CHECKR pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## VII.    THIRD CAUSE OF ACTION

### (Federal Fair Credit Reporting Act Violation – 15 U.S.C. §1681g)

7.1    Plaintiff re-alleges sections I through VI, inclusive as though fully set forth herein.

7.2    CHECKR violated 15 U.S.C. §1681g by failing to clearly and accurately disclose to Plaintiff all information in Plaintiff's credit file at the time of Plaintiff's request for the same.

7.3    As a result of this conduct, action and inaction of CHECKR, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress and interference with Plaintiffs' normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury.

7.4    CHECKR's conduct, action and inaction were willful, rendering CHECKR liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

7.5    In the alternative, CHECKR was negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

7.6    Plaintiff is entitled to recover costs and attorney's fees from CHECKR pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## VIII. FOURTH CAUSE OF ACTION

(Federal Fair Credit Reporting Act Violation – 15 U.S.C. §1681c-2 – as to CHECKR)

7.1    Plaintiff re-alleges sections 1 through VII, inclusive as though fully set forth herein.

7.2    CHECKR violated 15 U.S.C. §1681c-2 by failing to delete and block information in Plaintiff's credit file that was a result of identity theft after Plaintiff disputed and provided CHECKR with notice that it was a result of identity theft, wherein Plaintiff enclosed proof of Plaintiff's identity, an explanation that the identity theft information was not related to an account or transaction Plaintiff initiated, and a copy of a qualified identity theft report to law enforcement made under penalty of perjury and at risk of prosecution if the report was false.

7.3    CHECKR also violated 15 U.S.C. §1681c-2 by failing to notify DOORDASH, the furnisher of the identity theft information that the information was a result of identity theft, that an identity theft report had been filed, that the information had been blocked, and the dates of the block.

7.4    As a result of this conduct, action and inaction of CHECKR, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

PLAINTIFF'S COMPLAINT
3:26-CV-5774

16

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

7.5     CHECKR's conduct, action and inaction was willful, rendering CHECKR liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

7.6     In the alternative, CHECKR was negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

7.7     Plaintiff is entitled to recover costs and attorneys' fees from CHECKR pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## IX.    FIFTH CAUSE OF ACTION
### (Impermissible Inquiry – as to DOORDASH)

8.1     Plaintiff re-alleges sections I through VII, inclusive as though fully set forth herein.

8.2     Plaintiff had no relationship enumerated under 15 U.S.C. §1681b(a)(3) with DOORDASH.

8.3     Plaintiff did not provide DOORDASH with written instructions to request her consumer report under 15 U.S.C. §1681b(a)(2).

8.4     DOORDASH and its employees are prohibited from obtaining a consumer report under false pretenses, pursuant to 15 U.S.C. §1681q.

8.5     DOORDASH is required to establish reasonable procedures that would prevent its facilities from being used to obtain a consumer report under false pretenses and as specifically authorized, pursuant to 15 U.S.C. §1681b(f).

8.6     DOORDASH failed to establish reasonable procedures to prevent its facilities from being used to obtain a consumer report under false pretenses and as specifically authorized, pursuant to 15 U.S.C. §1681b(f).

8.7     DOORDASH knows that fraudulent applicants plague its platform and its website attempts to reassure consumers that it takes the issue seriously, but DOORDASH continues to prioritize the ease of letting complete strangers apply to be drivers through their smartphones

17

over a procedure that would prevent its facilities from being used to obtain consumer reports under false pretenses.

8.8    As a result of DOORDASH's conduct, action, and inaction, Plaintiff suffered damage, and continues to suffer actual damages, including economic loss, damage to reputation, emotional distress and interference with her normal and usual activities for which she seeks damages in an amount to be determined by the jury.

8.9    DOORDASH's conduct, action, and inaction were willful, rendering DOORDASH liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

8.10    In the alternative, DOORDASH was negligent, thereby entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

8.11    Plaintiff is entitled to recover costs and attorneys' fees from DOORDASH pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## IX.    SIXTH CAUSE OF ACTION

(Washington State Consumer Protection Act – as to DOORDASH & PERSONA)

8.1    Plaintiff re-alleges sections I through VIII, inclusive as though fully set forth herein.

8.2    Washington's Consumer Protection Act ("CPA") states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  RCW 19.86.020.

8.3    The CPA applies to the actions at issue herein because the Plaintiff is a "consumer" and DOORDASH and PERSONA are each a "business," this case involves conduct which occurred in the course of trade/commerce, the Plaintiff was damaged in her property by DOORDASH's and PERSONA's actions, and the complaint involves a matter of public interest which is capable of repetition and will likely affect other consumers in this state.

8.4    DOORDASH and PERSONA unfairly and/or deceptively permitted an identity thief to obtain employment in Plaintiff's name.

8.5    Plaintiff believes and therefore avers that DOORDASH and PERSONA prioritize their profits and convenience over protecting consumers who have no interest in DOORDASH from fraudulent driver applications, and this is both unfair and deceptive.

8.6    Additionally, DOORDASH has callously failed or refused to respond to any of Plaintiff's disputes, and has not withdrawn fraudulent 1099s from the IRS.

8.7    Trying to solve this problem on her own has taken Plaintiff unreasonable time, expense, frustration and inconvenience caused by DOORDASH and PERSONA.

8.8    DOORDASH's and PERSONA's actions are a direct and proximate cause of Plaintiff's injuries.

8.9    DOORDASH's and PERSONA's actions were intentional, willful, wanton, unfair, unconscionable, and outrageous.

8.10    DOORDASH's and PERSONA's actions illustrate why injunctions are necessary to protect Plaintiff and other Washington consumers and citizens from similar harm.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment to be entered against Defendants as follows:

A.    For an Injunction preventing DOORDASH from ever again permitting an applicant to obtain employment/driver work with DOORDASH without human review, pursuant to RCW 19.86.090, and Scott v. Cingular Wireless, 160 Wn.2d 843, 161 P.3d 1000 (2007); Hockley v. Hargitt, 82 Wn.2d 337, 349-50, 510 P.2d 1123 (1973); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 783-84, 719 P.2d 531 (1986); Lightfoot v. MacDonald, 86 Wn.2d 331, 335-36, 544 P.2d 88 (1976);

B.    For an Injunction requiring DOORDASH and PERSONA to overhaul their procedures to protect identity theft victims, pursuant to RCW 19.86.090, and Scott v. Cingular

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

Wireless, 160 Wn.2d 843, 161 P.3d 1000 (2007); Hockley v. Hargitt, 82 Wn.2d 337, 349-50, 510 P.2d 1123 (1973); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 783-84, 719 P.2d 531 (1986); Lightfoot v. MacDonald, 86 Wn.2d 331, 335-36, 544 P.2d 88 (1976);

C.      For actual and punitive damages against CHECKR and DOORDASH in an amount to be proven at trial, pursuant to 15 U.S.C. §1681, *et seq.*;

D.      As to DOORDASH and PERSONA, for Actual and Compensatory damages in an amount to be proven at trial, pursuant to RCW 19.86 *et seq.* and various common law claims;

E.      As to DOORDASH and PERSONA, for treble Plaintiff's Actual Damages up to the amount of $25,000, pursuant to RCW 19.86, *et seq.;*

F.      For costs and reasonable attorney's fees in an amount to be proven at trial pursuant to 15 U.S.C. §1681 and RCW 19.86 *et seq.*;

G.      For interest on the above amounts as authorized by law;

H.      For other relief as the Court deems just and equitable;

I.      For leave to amend this complaint as needed and as required; and

J.      For leave to seek Civil Rule 23(b) status if information becomes available through discovery supporting the need for class action status.

## X.      REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests a trial by jury pursuant to U.S. Const. Amend. 7.

Dated this 13th day of July, 2026.

Respectfully submitted,

S//SaraEllen Hutchison
SARAELLEN HUTCHISON (WSBA #36137)
Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66
Tacoma, WA 98402
Ph: (206) 529-5195 | Fax: (253) 302-8486
E-mail: saraellen@saraellenhutchison.com

PLAINTIFF'S COMPLAINT
3:26-CV-5774

20      Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com